**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Fort Myers Division**

KELLI GRAY                                         :
*on behalf of herself and*                         :
*all similarly situated individuals*,              :
                                                   :   Civil Action No. _____
                            Plaintiff,             :
                                                   :
v.                                                 :
                                                   :
TOPDOGHR INC.,                                     :
                                                   :
                            Defendant.             :
_____:

**PLAINTIFF'S CLASS ACTION COMPLAINT
<u>AND DEMAND FOR JURY TRIAL</u>**

COMES NOW, the Plaintiff, Kelli Gray, on behalf of herself and all similarly situated individuals, and for his Complaint against the Defendant, TOPDOGHR, INC., she states as follows:

**<u>INTRODUCTION</u>**

1.    This is an action under the FCRA against Defendant, a consumer reporting agency that routinely prepares incomplete, inaccurate, and outdated background reports for employment purposes by representing that criminal cases that have been "transferred" have no subsequent activity following their transfer. As a result, Defendant reports to employers that criminal cases are open and pending when they have in fact been dismissed.

2.    Defendant also reports the same criminal information multiple times on a report, thereby inaccurately exaggerating the consumer's criminal history. Defendant's practices harm consumers seeking employment by prejudicing their prospective employers with inaccurate and misleading criminal information.

3.      Defendant commits these violations pursuant to standard policies. This action therefore asserts claims on behalf of similarly situated individuals, and seeks actual and/or statutory damages, punitive damages, attorneys' fees, expenses, and all other available relief.

## JURISDICTION

4.      The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

5.      Pursuant to 28 U.S.C. §1391(b)(1) and (2),venue is proper in this Court because Defendant is headquartered in this District and Division and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Middle District of Florida, including in this District and Division.

6.      Pursuant to U.S. District Court for the Middle District of Florida Local Rule 1.02, this proceeding is properly instituted in the Fort Myers Division because Lee County has the greatest nexus with the cause.

## PARTIES

7.      Plaintiff Kelli Gray is an adult resident of Ward, Arkansas.

8.      Defendant TopDogHR Inc. is headquartered in Bonita Springs, Florida.

9.      Defendant sells background reports containing, *inter alia*, information about consumers' criminal backgrounds to prospective employers. *See generally* https://www.topdoghr.com/ (last visited on April 3, 2020).

10.     Defendant is a consumer reporting agency as contemplated by the FCRA, 15 U.S.C. § 1681a. Defendant is regularly engaged in the business of assembling,

evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

## THE FAIR CREDIT REPORTING ACT

11.    The FCRA was enacted to ensure that consumer reporting agencies report information in a manner that is "fair and equitable to the consumer," and "with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681.

12.    The FCRA requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" contained in consumer reports. *See* 15 U.S.C. § 1681e(b).

13.    Reports that contain factually correct information but nonetheless mislead their readers are neither maximally accurate nor fair to the consumers who are the subjects of such reports. *See Bush v. Roundpoint Mortg. Servicing Corp.*, 122 F. Supp. 3d 1347, 1351 (M.D. Fla. 2015).

14.    Consumer reporting agencies' obligation to ensure maximum possible accuracy includes an obligation to exclude multiple entries for the same criminal offenses. The reason for this is that "duplicative reporting of criminal cases on a single report creates an adverse presentation of Plaintiff to a prospective employer." *Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426, 436 (E.D. Pa. 2010).

15.    The FCRA further requires that, when a consumer reporting agency includes in a consumer report for employment purposes "information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's

ability to obtain employment," the credit reporting agency must (1) "at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported," or (2) "maintain strict procedures" to ensure that the public record information is "complete and up to date." 15 U.S.C. § 1681k(a).

16.    Moreover, upon receiving a dispute from the consumer, a consumer reporting agency is required to "conduct a reasonable reinvestigation to determine whether the disputed information is accurate." 15 U.S.C. § 1681i(a)(1)(A).

17.    As described below, Defendant systematically violates the FCRA.

18.    Defendant violates § 1681e(b) by routinely representing in its reports that criminal cases have been "transferred" and failing to report subsequent activity, including dismissal and closure. As a result, Defendant regularly and inaccurately reports criminal charges as "transferred" and/or "open" when they have in fact been closed.

19.    Defendant further violates § 1681e(b) by reporting the same offense multiple times in a single report, thereby exaggerating the extent of a consumer's criminal history.

20.    Defendant also violates § 1681k by failing to maintain strict procedures to ensure that the public record information included in its reports that is likely to have an adverse effect upon a consumer's ability to obtain employment is complete and up-to-date.

21.    Plaintiff, on behalf of herself and the Classes set forth below, brings claims against Defendant for these violations of § 1681e(b) and § 1681k .

22.    Further, as to Plaintiff, Defendant violated § 1681i by failing to conduct a reasonable reinvestigation after Plaintiff disputed her inaccurate report.

## DEFENDANT'S INACCURATE AND INCOMPLETE REPORT

23.    On December 4, 2019, Plaintiff, who was at the time employed with another company, applied for a remote Customer Service Agent position with LifeQuotes, Inc. ("LifeQuotes"), which is based in Illinois.

24.    On December 5, 2019, Plaintiff received an email from LifeQuotes, alerting her that, as part of her application, Plaintiff would need to pass a background check administered by Defendant. Plaintiff completed LifeQuotes's background verification form, authorizing LifeQuotes to order a background check from Defendant.

25.    LifeQuotes extended an offer to Plaintiff, and invited her to begin new employee orientation beginning on December 17, 2019.

26.    Plaintiff accepted the offer and provided notice to her previous employer.

27.    On December 17, 2019, Plaintiff began working for LifeQuotes.

28.    On December 18, 2019, Defendant prepared a background check regarding Plaintiff and furnished the background check to LifeQuotes for a fee.

29.    The background check contained information on Plaintiff's criminal history. As such, it bore on her "character, general reputation, personal characteristics, or mode of living," and was therefore s a consumer report, as defined by the FCRA. 15 U.S.C. § 1681a(d).

30.    Additionally, the background check was for the purposes of employment and included a public record relating to an arrest. Thus, the public record information was

"likely to have an adverse effect on [Plaintiff's] ability to obtain employment." 15 U.S.C. § 1681k(a)(2).

31.    At the time it sent Plaintiff's report to LifeQuotes, Defendant did not send Plaintiff a contemporaneous notice indicating that it was publishing public record information relating to her that was likely to have an adverse effect on her ability to obtain employment.

32.    The criminal history section of Plaintiff's report that Defendant furnished to LifeQuotes includes three sections: (1) "County Criminal Record Search" ("County"), (2) "State Criminal Court Search" ("State"), and (3) "ID Validation, Criminal Search, OFAC/Sex Offender Search" ("ID Validation").

33.    The County section of the report lists one criminal record: a felony for domestic battery.

34.    The "case number" on this record is "2018-94."

35.    The "disposition" on this record indicates that the case was "transferred."

36.    The "disposition date" for this transfer is listed as May 14, 2018.

37.    The "comments" section of this record reads: "TRANSFERRED TO CABOT DISTRICT COURT; **NO FURTHER INFORMATION AVAILABLE**"

38.    The State section of the report lists the same record:  a felony for domestic battery, with a "case number" of "2018-94."

39.    This record in the State section otherwise mirrors that found in the County section: the "disposition" of the case was "transferred";  the "disposition date" was "May

14, 2018"; and the "comments" read as follows: "TRANSFERRED TO CABOT DISTRICT COURT; **NO FURTHER INFORMATION AVAILABLE**"

40.     Finally, the ID Validation section of the report also lists a felony for domestic battery.

41.     This record in the ID Validation section provides slightly different details than that found in the State and County sections: (1) the "case status" is "open" (not "transferred") and the record is identified by the "Defendant ID Number" of "3818802" (not the "case number" of "2018-94").

42.     Nonetheless, this record clearly refers to the same charge as that found in the State and County sections. All three records refer to a domestic battery charge that was filed on February 28, 2018 concerning an offense that occurred on January 3, 2018.

43.     Indeed, this *one* charge *does* belong to Plaintiff. However, as opposed to what Defendant reported to LifeQuotes on December 18, 2019, the case had long been dismissed and closed.

44.     Yet, more than two months later, when Defendant prepared its report on Plaintiff for LifeQuotes, Defendant inaccurately represented that the case was "open" and "transferred," and represented that there had been no further activity in the case since May 14, 2018.

45.     Moreover, Defendant included this one case in its report not once, not twice, but *three* separate times.

46.     By publishing derogatory, inaccurate, and outdated information about Plaintiff, Defendant violated the FCRA and, in so doing, injured Plaintiff.

47.    On December 18, 2019, as a result of the derogatory and inaccurate information that Defendant had published about Plaintiff to LifeQuotes, LifeQuotes placed Plaintiff's employment on hold.

48.    That same day, December 18, 2019, Plaintiff contacted Defendant via phone, email, and an online submission form to dispute the inaccurate information that Defendant had reported in her background check to LifeQuotes.

49.    Specifically, Plaintiff disputed Defendant's contention that the domestic battery charge against her was open, transferred, and had no activity following May 14, 2018. Rather, the case against Plaintiff was closed—and had been for months. Plaintiff requested a copy of her report that had been prepared by Defendant, as well as an opportunity to talk to someone to correct the inaccurate information.

50.    Plaintiff eventually received a response from Defendant over email.

51.    Defendant sent Plaintiff a copy of her background check.

52.    Plaintiff responded that there was incorrect information in the report, and asked what she needed to do to correct it.

53.    Defendant asked what information was incorrect.

54.    Plaintiff responded that the criminal charge against her was not open, but dismissed.

55.    Defendant maintained that it "reported the information correctly" and that the charge "was remanded/transferred to Cabot District Court," which "[wa]s exactly what [Defendant's] report reads."

56. Plaintiff agreed that the charge had been remanded to Cabot District Court, but explained that the charge had been subsequently dismissed. Plaintiff even provided Defendant with documentation to prove that the charge had been dismissed and closed.

57. A mere *four minutes* after receiving this documentation that clearly established that Plaintiff's charge had been dismissed after its transfer, Defendant maintained that its report was accurate. "We reported the information correctly," Defendant replied to Plaintiff.

58. In addition to the documentation that Plaintiff provided, Defendant could have checked the court records which show—as Plaintiff asserted—that the criminal charge against Plaintiff had been dismissed.

59. But instead of conducting such a search, thoroughly reviewing the exonerating documentation provided by Plaintiff, or otherwise completing a reasonable reinvestigation following Plaintiff's dispute, Defendant simply maintained that its report on Plaintiff was accurate.

60. On December 19, 2019, LifeQuotes terminated Plaintiff's employment as a result of the inaccurate information Defendant included in its report on Plaintiff to LifeQuotes.

61. As a result of Defendant's inaccurate report and unreasonable investigation, Plaintiff incurred wage loss and other pecuniary damages and suffered emotional distress.

## **DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

62.     If Defendant had reasonable procedures to assure the maximum possible accuracy of its consumer reports, it would have determined that the information in Plaintiff's report was incorrect and outdated.

63.     If, when including public record information in a consumer report that was likely to have an adverse effect on the consumer's ability to obtain employment, Defendant maintained strict procedures to ensure that the public record information was complete and up-to-date, it would have determined that the information in Plaintiff's report was incomplete and out-of-date.

64.     Defendant's failure to ensure that it does not report criminal records as simply "transferred," when there has been subsequent activity in the case following transfer, is unreasonable. Defendant made an intentional choice to prepare its reports in an under-inclusive fashion, reporting charges without regard to subsequent activity, including dismissal and closure.

65.     Defendant relies on outdated public records data, as is evidenced by the fact that, after the transfer on May 14, 2018, Defendant purported to have "no further information available" regarding Plaintiff's charge, despite subsequent—and publicly available—updates in the case.

66.     In fact, Defendant attempts to protect itself from liability by placing a purported disclaimer on its reports stating that the information contained therein may be inaccurate. Defendant's reports state:

> This report is furnished to you pursuant to the Agreement for Service between the parties and in compliance with the Fair Credit Reporting Act. This report is furnished based upon your certification that you have a permissible purpose to obtain the report. The information contained herein was obtained in good faith from sources deemed reliable, but the completeness or accuracy is not guaranteed.

67.     Through the above disclaimer, Defendant attempts to deflect the burden of ensuring the accuracy of its reports. Specifically, Defendant suggests—incorrectly—that its only responsibility is to obtain information "in good faith" from sources it "deem[s] reliable," and explicitly acknowledges that Defendant's reports may be incomplete or inaccurate.

68.     This is insufficient under the FCRA. Rather than serve as a conduit of information from other sources, Defendant is required to follow reasonable procedures to assure maximum possible accuracy of its reports. *See* 15 U.S.C. § 1681e(b). When including damaging public record information in a consumer report prepared for employment purposes, Defendant is further required to (1) notify consumers that such information is being reported or (2) maintain strict procedures to ensure that the public record information on which it relies is complete and up-to-date. *See* 15 U.S.C. § 1681k(a).

69.     For example, Defendant could, and should, have had a policy which required it to *verify* the information it obtains from its purportedly reliable sources against publicly available information regarding post-transfer activity. However, Defendant chose not to implement such a policy in order to avoid the time and expense that would have been associated with it.

70.     Defendant failed to conduct a search of publicly available records to verify that Plaintiff's criminal case had been closed.

71.     Defendant also failed to thoroughly review the documentation that Plaintiff provided to establish that her lone criminal charge had been dismissed following its transfer.

72.     Instead, Defendant unreasonably, inaccurately, and swiftly maintained that its report was correct, despite evidence to the contrary readily available in Defendant's inbox.

73.     In addition to the conduct set forth above, Defendant's willful conduct is further reflected by, *inter alia*, the following:

a.     The FCRA was enacted in 1970; Defendant has been in the consumer reporting industry for 17 years and has thus had nearly two decades to become compliant. *See generally* https://www.topdoghr.com/ (last visited on April 3, 2020).

b.     Defendant is a corporation with access to legal advice through its own general counsel's office and outside employment counsel.  Yet, there is no contemporaneous evidence that it determined that its conduct was lawful.

c.     Defendant knew or had reason to know that its conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA.

d.     Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

e.     Defendant's violations of the FCRA were negligent, and/or willful, and were repeated and systematic.

At all times relevant hereto, Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. Defendant's conduct

was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and Defendant will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive, outdated, and erroneous consumer reports than in producing accurate reports.

## **CLASS ACTION ALLEGATIONS**

74.     Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of the following proposed classes:

> **Transferred Case Class:** All individuals who were the subjects of consumer reports furnished by Defendant which reported a case as "transferred" and, despite additional activity in the case, provided no further reporting on the case after the transfer and prior to the date on which the report was issued. The Transferred Case Class begins on the date two years prior to the filing of this Complaint and ends on the date the Class list is prepared.

> **Multiple Entries Class:** All individuals who were the subjects of consumer reports furnished by Defendant which reported the same criminal incident than once in a report in the two years predating the filing of the original Complaint and continuing through the date the class list is prepared.

75.     Numerosity: The Classes are so numerous that joinder of all class members is impracticable. Given the volume of Defendant's business, there are thousands of class members.

76.     Commonality: Common questions of law and fact exist as to all members of the

Classes and predominate over any questions solely affecting individual members, including but not limited to:

a.      Whether Defendant violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy in reporting criminal cases as "transferred";

b.      Whether Defendant violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy in reporting criminal incidents multiple times on a report;

c.      Whether Defendant violated the FCRA by failing to follow strict procedures to ensure public records information that it reports is complete and up-to-date;

d.      Whether Defendant's violations of the FCRA were willful; and

e.      The proper measure of damages.

77.      Typicality: Plaintiff's claims are typical of the members of the Classes. It is typical for Defendant to produce consumer reports which fail to account for the fact that transferred criminal cases listed therein had subsequent activity, including closure, following transfer. Similarly, it is typical for Defendant to report offenses multiple times within the same report. The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistently with other class members in accordance with its standard policies and practices.

78.      Adequacy: Plaintiff is a member of the Classes and will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation generally, and in FCRA litigation in particular.

79.      Class certification is appropriate under Rule 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only

14

individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA.  Members of the Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the Classes on an individual basis. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

80.     In view of the complexities of the issues and the expenses of the litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

81.     Yet, the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action. The administration of this action can be handled by class counsel or a third-party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**(On Behalf of Plaintiff and the Transferred Case Class)**

82.    Plaintiff reiterates each of the allegations in the preceding paragraphs as set forth at length herein.

83.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished. Specifically, Defendant:

a.    Misidentified Plaintiff's one prior criminal case as "transferred" and "open."

b.    Failed to include any further information or subsequent activity on Plaintiff's report.

c.    Represented that no further information was available on Plaintiff's case following its transfer on May 14, 2018.

d.    Failed to attempt to obtain subsequent and publicly available information on cases that had been transferred.

84.    The foregoing violations were negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681e(b).

85.    Plaintiff and the Transferred Case Class are entitled to actual damages and/or statutory damages of not less than $100 and not more than $1,000 for each and every violation and are further entitled to recover their costs and attorneys' fees, pursuant to 15

U.S.C. §§ 1681n, o. Plaintiff and the Transferred Case Class are also entitled to punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).

## COUNT II
### 15 U.S.C. § 1681k
### (On Behalf of Plaintiff and the Transferred Case Class)

86.     Plaintiff reiterates each of the allegations in the preceding paragraphs as set forth at length herein.

87.     Defendant violated 15 U.S.C. § 1681k by failing to maintain strict procedures to ensure that when it included in its reports public record information that was likely to have an adverse effect on Plaintiff's and class members' ability to obtain employment, that public record information was complete and up-to-date. Specifically, Defendant:

a.     Misidentified Plaintiff's one prior criminal case as "transferred" and "open."

b.     Failed to include any further information or subsequent activity on Plaintiff's report.

c.     Represented that no further information was available on Plaintiff's case following its transfer on May 14, 2018.

d.     Failed to attempt to obtain subsequent and publicly available information on cases that had been transferred.

88.     The foregoing violations were negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681k.

89.     Plaintiff and the Transferred Case Class are entitled to actual damages and/or statutory damages of not less than $100 and not more than $1,000 for each and every violation and are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. §§ 1681n, o. Plaintiff and the Transferred Case Class are also entitled to punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).

## COUNT III
### 15 U.S.C. § 1681e(b)
**(On Behalf of Plaintiff and the Multiple Entries Class)**

90.     Plaintiff reiterates each of the allegations in the preceding paragraphs as set forth at length herein.

91.     By reporting the same criminal incident multiple times on a single report, Defendant exaggerated the criminal history of consumers and created an adverse and misleading presentation of consumers to their employers and prospective employers.

92.      Defendant thus violated the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in its consumer reports.  *See* 15 U.S.C. § 1681e(b).

93.     The foregoing violations were negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other members of the Multiple Entries Class under 15 U.S.C. § 1681e(b).

94.     Plaintiff and the Multiple Entries Class are entitled to actual damages and/or statutory damages of not less than $100 and not more than $1,000 for each and every violation and are further entitled to recover their costs and attorneys' fees, pursuant to 15

U.S.C. §§ 1681n, o. Plaintiff and the Multiple Entries Class are also entitled to punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).

## COUNT IV
### 15 U.S.C. § 1681i
### (On Behalf of Plaintiff Individually)

95. Plaintiff reiterates each of the allegations in the preceding paragraphs as set forth at length herein.

96. Upon receiving Plaintiff's dispute, Defendant violated 15 U.S.C. § 1681i by failing to "conduct a reasonable reinvestigation to determine whether the disputed information [wa]s accurate."

97. The foregoing violation was negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681i.

98. Plaintiff is entitled to actual damages and/or statutory damages of not less than $100 and not more than $1,000 and is further entitled to recover her costs and attorneys' fees, pursuant to 15 U.S.C. §§ 1681n, o.  Plaintiff is also entitled to punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).

## JURY TRIAL DEMANDED

99. Plaintiffs demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Classes, prays for relief as follows:

a.  determining that this action may proceed as a class action under Fed. R. Civ. P. 23(b)(3);

b.  designating Plaintiff as representative for the Classes and designating Plaintiff's counsel as counsel for the Classes;

c.  issuing proper notice to the Classes at Defendant's expense;

d.  declaring that Defendant committed multiple, separate violations of the FCRA;

e.  declaring that Defendant acted negligently, or willfully and in deliberate or reckless disregard of the rights of Plaintiff and the Classes under the FCRA;

f.  awarding actual statutory and punitive damages as provided by the FCRA;

g.  awarding punitive damages;

h.  awarding reasonable attorneys' fees and costs as provided by the FCRA; and

i.  granting further relief, in law or equity, as this Court may deem appropriate and just as provided by the FCRA.

Dated: May 8, 2020

/s/Barry S. Balmuth
Barry S. Balmuth, B.C.S.
FL Bar No. 0868991
BARRY S. BALMUTH, P.A.
The Oaks Center - 2505 Burns Road
Palm Beach Gardens, Florida 33410
Tel: (561) 242-9400
Fax: (561) 366-2650
barryb@flboardcertifiedlawyer.com

E. Michelle Drake (Trial Counsel)
MN Bar No. 0387366*
John G. Albanese (Trial Counsel)
MN Bar No. 0395882*
BERGER MONTAGUE PC
43 S.E. Main Street, Suite 505
Minneapolis, MN 55414
Tel: (612) 594-5999
Fax: (612) 584-4470
emdrake@bm.net
jalbanese@bm.net

*pro hac vice forthcoming

Counsel for Plaintiff and the Class